**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

FILED
MAR 16 2020
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

Revised 07/07 WDNY

Thomas Felton Jr.

_____
Name(s) of Plaintiff or Plaintiffs

**Jury Trial Demanded: Yes** X **No** ____

-vs-

Monroe Community College; Monroe Community College Faculty Association; Jeffrey Dunker; Matthew O'Connor; Matthew Hachee; Bethany Gizzi; Todd Oldham; William Rotenberg
_____
Name of Defendant or Defendants

**DISCRIMINATION COMPLAINT**
_____ -CV- _____

20 CV 6156 EAW

---

You should attach a copy of your **original Equal Employment Opportunity Commission (EEOC) complaint**, a copy of the Equal Employment Opportunity Commission **decision**, AND a copy of the **"Right to Sue"** letter you received from the EEOC to this complaint. Failure to do so may delay your case.

*Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.*

This action is brought for discrimination in employment pursuant to *(check only those that apply)*:

X   Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub.L.No. 102-166) (race, color, gender, religion, national origin).
   **NOTE**:  In order to bring suit in federal district court under Title VII, you **must first obtain a right to sue letter** from the Equal Employment Opportunity Commission.

_____   Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub.L.No. 99-592, the Civil Rights Act of 1991, Pub.L.No. 102-166).
   **NOTE**:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you **must first file charges** with the Equal Employment Opportunity Commission.

_____   Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112-12117 (amended by the Civil Rights Act of 1991, Pub.L.No. 102-166).
   **NOTE**:  In order to bring suit in federal district court under the Americans with Disabilities Act, you **must first obtain a right to sue letter** from the Equal Employment Opportunity Commission.

**JURISDICTION** is specifically conferred upon this United States District Court by the aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991, Pub.L.No. 102-166, and any related claims under New York law.

**In addition to the federal claims indicated above**, you may wish to include New York State claims, pursuant to 28 U.S.C. § 1367(a).

| X | New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 (age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status). |

**PARTIES**

1. My address is: PO Box 93254, Rochester NY, 14692-8254

    My telephone number is: 585-230-1830

2. The name of the employer(s), labor organization, employment agency, apprenticeship committee, state or local government agency who I believe discriminated against me is/are as follows:

    Name: Monroe Community College

    Number of employees: 200+

    Address: 1000 E. Henrietta Road, Rochester NY, 14623

3. (If different than the above), the name and/or the address of the defendant with whom I sought employment, was employed by, received my paycheck from or whom I believed also controlled the terms and conditions under which I were paid or worked. (For example, you worked for a subsidiary of a larger company and that larger company set personnel policies and issued you your paycheck).

    Name: _____

    Address: _____

**CLAIMS**

4. I was first employed by the defendant on (date): September 2010

2

5.  As nearly as possible, the date when the first alleged discriminatory act occurred is: _____
    7/20/2017

6.  As nearly as possible, the date(s) when subsequent acts of discrimination occurred (if any did): 7/26/2017, 11/17/2018, 11/18/2018, 12/5/2018, 12/21/2018, 2/24/2019, 3/19/2019, 4/9/2019, 10/10/2019, 10/15/2019, 11/22/2019

7.  I believe that the defendant(s)

    a. _____   Are still committing these acts against me.
    b.  X      Are not still committing these acts against me.
    (Complete this next item **only** if you checked "b" above)   The last discriminatory act against me occurred on (date) 11/22/2019

8.  (Complete this section **only** if you filed a complaint with the New York State Division of Human Rights)

    The date when I filed a complaint with the New York State Division of Human Rights is

    _ (estimate the date, if necessary)

    I filed that complaint in (identify the city and state): _____

    The Complaint Number was: _____

9.  The New York State Human Rights Commission did _____ /did not _____ issue a decision. (**NOTE:** If it **did** issue a decision, you **must attach** one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

10. The date (if necessary, estimate the date as accurately as possible) I filed charges with the Equal Employment Opportunity Commission (EEOC) regarding defendant's alleged discriminatory conduct is: 9/25/2019

11. The Equal Employment Opportunity Commission did X _____ /did not _____ issue a decision. (**NOTE:** If it **did** issue a decision, you **must attach** one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

12. The Equal Employment Opportunity Commission issued the attached Notice of Right to Sue letter which I received on: 12/19/2019 _____. (**NOTE:** If it

3

**did** issue a Right to Sue letter, you **must attach** one copy of the decision to **each** copy of the complaint; failure to do so will delay the initiation of your case.)

13. I am complaining in this action of the following types of actions by the defendants:

    a. _____ Failure to provide me with reasonable accommodations to the application process

    b. __X__ Failure to employ me

    c. _____ Termination of my employment

    d. __X__ Failure to promote me

    e. _____ Failure to provide me with reasonable accommodations so I can perform the essential functions of my job

    f. _____ Harassment on the basis of my sex

    g. _____ Harassment on the basis of unequal terms and conditions of my employment

    h. __X__ Retaliation because I complained about discrimination or harassment directed toward me

    i. _____ Retaliation because I complained about discrimination or harassment directed toward others

    j. __X__ Other actions (please describe) **Same Race Discrimination: Replacing my regular teaching assignment with a "token" older black person.**

14. Defendant's conduct is discriminatory with respect to which of the following *(check all that apply)*:

    a. __X__ Race                    f. _____ Sexual Harassment

    b. _____ Color                 g. _____ Age
                                     _____ Date of birth
    c. _____ Sex
                                     h. _____ Disability
    d. _____ Religion              Are you incorrectly perceived as being disabled by your employer?

    e. _____ National Origin       ___ yes  ___ no

15. I believe that I was __X__/was not _____ **intentionally** discriminated against by the defendant(s).

4

16. I believe that the defendant(s) is/are _____ is not/are not  X  still committing these acts against me. (If you answer is that the acts are not still being committed, state when: 2/26/2020 and why the defendant(s) stopped committing these acts against you: because of me calling attention to the discriminatory actions and persevering through the retaliation.

17. **A copy of the charge to the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of my claim.** (**NOTE:** You **must** attach a copy of the **original complaint** you filed with the Equal Employment Opportunity Commission and a copy of the **Equal Employment Opportunity Commission affidavit** to this complaint; failure to do so will delay initiation of your case.)

18. The Equal Employment Opportunity Commission *(check one)*:
    _____ **has not** issued a Right to sue letter
     X   **has** issued a Right to sue letter, which I received on  12/22/2019 

19. State here as briefly as possible the *facts* of your case. Describe how each defendant is involved, including *dates* and *places*. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. *(Use as much space as you need. Attach extra sheets if necessary.)*

Facts of my case are attached...

**FOR LITIGANTS ALLEGING AGE DISCRIMINATION**

20. Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct
    _____ 60 days or more have elapsed     _____ less than 60 days have elapsed

**FOR LITIGANTS ALLEGING AN AMERICANS WITH DISABILITIES ACT CLAIM**

21. I first disclosed my disability to my employer (or my employer first became aware of my disability on _____

5

22.  The date on which I first asked my employer for reasonable accommodation of my disability is _____

    _____

23.  The reasonable accommodations for my disability (if any) that my employer provided to me are: _____

    _____

    _____

    ___

24.  The reasonable accommodation provided to me by my employer were _____/were not _____ effective.

**WHEREFORE**, I respectfully request this Court to grant me such relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

Dated: 3/15/2020            _____[signature]_____
                                      Plaintiff's Signature

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
100 State Street
Rochester, NY 14614

**Re: Complaint of Discrimination**
**525-2019-01555 Thomas Felton Jr. v. Monroe Community College**

To Whom It May Concern:

The tenets of this complaint include (1) Racial Discrimination (2) Breach of Contract (3) Harassment (4) Retaliation. All of which have caused me undue mental anguish and stress. I Thomas Felton Jr. believe I was discriminated against because of my race, in violation of Title VII of the Civil Rights Act of 1964 for the following reasons unlawful employer and labor organization practices.

I would like to file this complaint against:

1. Monroe Community College
2. Monroe Community College Faculty Association
3. Jeffrey Dunker: Department Chair, Information and Computer Technologies
4. Matthew O'Connor: Assistant Vice President
5. Todd Oldham: Vice President
6. William Rotenberg: Director of P-Tech (MCC & P-Tech/Rochester City School District)
7. Bethany Gizzi: Faculty Association President
8. Matthew Hachee: Faculty Association Representative

According the EEOC, systemic discrimination "involves a pattern or practice, policy, or class case where the alleged discrimination has a broad impact on an industry, profession, company or geographic area (EEOC). I believe the racial discrimination aspect of this complaint has a broad community impact on faculty, staff and students of color. The "trickery" in this particular case is the attempt of my all white chain of command to use a "token" person of the same race, from a different department to replace me. By using a person of the "same race," my all white chain of command believed race discrimination would be a moot argument. My all white chain of commands unwarranted refusal to meet with me regarding my concerns did not make sense after the tremendous amount of work and effort devoted to the department of Information and Computer Technologies (ICT). Since 2010 I have taught as an adjunct and worked as project coordinator for a SUNY High Needs Grant to "Increase Diversity in Mobile and Cloud Computing.

My initial concern which I took to Jeffrey Dunker was regarding the Saturday courses I taught being moved to weekdays. I could not understand why the classes where changed to weekdays, especially because the Saturday courses were often full with a waitlist. Based on the evidence, there seems to have been a concerted effort to not hire me, reduce my courses and push me out of ICT. The pattern of discrimination and targeting began on or around July 20, 2017 and continued through late 2019. There were a number of attempts to determine my schedule, not to benefit me, because opportunities never materialized into additional courses for my adjunct teaching load, or notification of at least two full-time positions. To the

contrary, 2019 was the first time I hadn't worked at MCC in approximately six years. Between 2016 and 2019:

- A black adjunct from another department, was given my course material and the course I had been teaching for approximately two years. He was brought into the department as an adjunct.
- I believe a white woman was hired full-time which I was not notified of the posting according to the contract.
- I believe an Asian man was hired full-time which I was not notified of the posting according to the contract.
- I believe a white man was hired full-time which I was not notified of the posting according to the contract.

While it is the six individuals named in this complaint I believe to have coordinated and acted directly against me or by proxy, Monroe Community College and the Monroe Community College Faculty Association are implicit in the discrimination complaint due the number of its processes stymied by factors such as personal relationships, failed practices, failed policies and/or fear of retaliation. While the spirit of MCC's Discrimination Complaint process provides hope, the process is ambiguous at best and could hamper an employee's pursuit of filing a discrimination complaint. Dr. Calvin Gantt's (Chief Diversity Officer) silence serves as evidence of the systemic discrimination at MCC. Dr. Gantt has been part of complaint emails for the better part of a year. I am not aware of any correspondence from Dr. Gantt. Even for the Chief Diversity Officer, and I believe MCC has set the tone. As black man, Dr. Gantt seems to be aware he should not get involved.

The allegations in this complaint will show a pattern of discrimination, harassment and retaliation used to push me out of ICT where I have taught and worked as a Project Coordinator since 2010. My reluctance to seek guidance from the Faculty Association played a role in me not submitting my course selection for Fall 2019 in a timely manner. My reluctance is directly related to the *inadvertent* email sent to me by Matthew Hachee December 21, 2018, and Bethany Gizzi's bland responses to my allegations. As a matter of record, Jeffrey Dunker, Matthew O'Connor and William Rotenberg report to Todd Oldham. They are all aware of my work on the SUNY High Needs Grant which was to "Increase Diversity in Mobile and Cloud Computing" and/or Cybersecurity.

While I am the direct recipient of the actions of this complaint, the broader impact to the community includes Black and Latino students at both MCC and P-Tech, a program school in the Rochester City School District which an Information Technology focus, as well as faculty and staff of color. As an employee of both MCC and P-Tech, I was used to fill programming gaps and/or develop initial programming versus guiding and making decisions for students of color in the field of Information Technology. In order for the broader community to reap the benefits of programs such as the SUNY High Needs Grant and P-Tech, it is my opinion there needs to be sustainable models of education and workforce development for students of color; not a one-and-done when the grant expires. I believe the department of Information and Computer Technologies at MCC was gaining momentum in its efforts to recruit and educate a diverse population of students into the fields of Cybersecurity and IT. I would say those efforts have fallen flat if there is indeed a decrease in enrollment as Jeffrey Dunker mentioned. There is also a questionable

relationship between MCC and P-Tech which needs to be examined for the benefit of those high school students of color.

### Additional Information related to Discrimination Complaint

- 2010: I was hired at MCC as an Alice Young Intern to teach as an adjunct in the department of Information and Computer Technology (ICT). The internship is designed to provide students learning opportunities from a diverse faculty.

- I have had good performance evaluations since I have been at MCC.

- I have not had any write-ups regarding performance since I have been at MCC.

- 2014-2016: I served as Project Coordinator a SUNY High Needs Grant to Increase Diversity in Mobile and Cloud Computing which includes Cybersecurity.

- My niece who is a black female is also a 2016 high school graduate and will begin working at IBM upon graduating from Utica College with a degree in Cybersecurity.

- Based on data from MCC Institutional Research, during my time as Project Coordinator, I increased student enrollment in the ICT Cybersecurity program.

- On behalf of MCC, I Attended three Community College Cybersecurity Summits (3CS) in 2015 (Las Vegas), 2016 (Pittsburgh) and 2017 (Maryland) on behalf of MCC and ICT.

- January 15, 2016: While I was never asked to share any of the information obtained from the 3CS conferences, Matthew OConnor signed and submitted a Memorandum of Understanding on behalf of MCC. National Cyberwatch provides institutions access to curriculum, cybersecurity skills development and program marketing.

- May 9, 2016: As Project Coordinator, I put together a well-attended conference with approximately 200 participants from government, k-12 education and business "Increasing Diversity in Cybersecurity and IT." President Kress gave the welcome address. From MCC, the conference was also attended by Bill Rotenburg, Matthew OConnor and Todd Oldham.

- July 20, 2017: Bill Rotenberg emailed me to find out if I was involved in the development of a charter school or still with RCSD. He also wanted to know if I was interested in teaching Intro to Networking to P-Tech students although he could not guarantee anything.

- July 20, 2017: Jeffrey Dunker requested access to the course material I created for the Intro to Linux course to give to Harry Payne, an adjunct professor that was transferred to ICT from another department.

- July 26, 2017: Bill Rotenberg wanted to know if in my "current job, can you teach a course or two during the school day?"

- The Intro to Linux and Intro to Cybersecurity courses were subsequently moved from Saturday to the weekday during a time I was not available to teach and online, giving full time and part-time faculty priority over adjuncts, unless the adjuncts could teach during the day.

- November 17, 2018: Binh-Yen Nguyen came to my Saturday Intro to Cybersecurity class in 9-185. Binh verified the email he received regarding an Open House Lab being held in 9-185 during the time I was to be teaching. I checked my email, but had not received anything about Open House or a room change from Jeffrey Dunker, the department chair. I moved the physical lecture to online assignments for the day.

- November 18, 2018: I wrote Jeffrey Dunker an email stating my concerns related to me not having my regular teaching assignment for Spring 2019 after giving the Intro to Linux course and the course material I created to Harry Payne.

- December 5, 2018: The fact that Harry Payne was transferred from ESOL/Transitional Studies to teach in ICT is contrary to Jeffrey Dunkers claim of "reduced enrollment." As a matter-of-fact, at least two full-time positions were filled between 2016 and 2018 which I brought up as a breach of contract because I was not notified of these two full-time position per the Faculty Association contract.

- December 6, 2018: Matthew OConnor emailed me "there are no contractual issues to discuss" after I complained about Jeffrey Dunker giving the Intro to Linux course and my material to Harry Payne. Matthew OConnor in the same email referred me to Kimberley Collins to discuss the contract. There were clearly contractual issues, but Matthew O'Connor did not feel it necessary to become aware of the contract to research

- December 21, 2018: Matthew Hachee (union rep) emailed Taine (union rep) to thank her for sitting in on the 2:30 meeting with Melissa Fingar, Kimberley Collins and myself. As my union rep, the person that is supposed to be advocating for me, Matthew Hachee mistakenly sent me an email he was supposed to be sending as a reply to Taine. Matthew's email to Taine said "I dont think the FA needs to stake any position other than to advise him privately. This is his fight entirely. I will forward emails asap....Nothing really to do but observe the fireworks, I suspect."

- December 21, 2018: I met with Melissa Fingar, Kimberley Collins and Taine Vinci to discuss my discrimination complaint.

- January 30, 2019: Met with Bethany Gizzi, President of the Faculty Association to discuss my grievance.

- February 4, 2019: Bethany Gizzi, emailed me to let me know that she had a conversation with Melissa Fingar during a contract administration meeting. She said Melissa would be reaching out to Jeffrey Dunker and Matthew OConnor.

- February 15, 2019: Melissa Fingar emailed me to let me know that she reached out to Matt OConnor and Jeffrey Dunker regarding my concerns. Melissa reassured me this is not the way the college wants members to feel; and she "understood my frustration."

- February 24, 2019: I emailed Bethany Gizzi, President of the Faculty Association to ask about a time frame for a FA investigation. I do not believe Bethany responded to my email.

- March 19, 2019: Jeffrey Dunker emailed a new ICT form requesting information on adjunct daily availability. Historically, the department chair would simply send faculty courses with the days and times for us to choose. I was a bit reluctant to submit the form and was not comfortable taking the issue to the Faculty Association after their position related to the December 21, 2018 meeting.

- April 5, 2019: Jeffrey Dunker advised me he could not honor my course request for Fall 2019 because I submitted my availability form past the deadline.

- October 10, 2019: After emailing Jeffrey Dunker my course selection which included the Intro to Linux course for Spring 2020, I emailed Melissa Fingar to see if she could make sure Jeffrey Dunker understood my concern with the Intro to Linux course before assigning the course. My concern was once the course is assigned to an adjunct, the course cannot be taken from the adjunct.

- October 15, 2019: I emailed Jeffrey Dunker to ask him why he assigned the Intro to Linux course to Harry Payne in advance of the October 16th noon deadline. The Intro to Linux class is scheduled at 5:30 pm on Tuesdays and Thursdays, a time that I am available. Jeffrey is aware that once a course is assigned to an adjunct, it cannot be taken away. Jeffrey never replied to my email to explain why he assigned the Intro to Linux course days before the deadline he set. In this email, I also asked to be assigned an online section of Intro to Cybersecurity.

- Article 32, Section C concerning Adjunct Faculty and the Assignment of Available Courses states "Departments are responsible for developing and implementing procedures for assigning courses to adjuncts. These procedures must be consistent with general College policies." Based on the fact that Jeffrey Dunker assigned the Intro to Linux course in advance of the October 16th deadline he created, it is apparent that he believes as department chair, he can create the procedures and change them whenever he wants.

- October 15, 2019: I had a 37 minute phone call with Melissa Fingar. She agreed that it appears Jeffrey Dunker has something against me. We discussed Jeffrey Dunkers assumption that he does have to be accountable for his actions. I asked Melissa over the phone, just as in emails if she has heard from Todd Oldham; she replied that he has not responded.

- October 15, 2019: Jeffrey Dunker emailed stating he had set aside the online section of Intro to Cybersecurity and add me to the Master Schedule. In this email, he referenced my obligations with RCSD. He also referenced the March Intro to Keyboarding course I had to cancel due to my contract with RCSD.

Thomas Felton Jr. v. Monroe Community College                    EEOC Case Number 525-2019-01555

- November 22, 2019: I sent another email to Jeffrey Dunker asking why he had not assigned me the online Cybersecurity a month after he said he would October 15, 2019. I advised him the Master Schedule still shows TBA.

- November 22, 2019: Jeffrey Dunker replied to my email regarding the Master Schedule. His reply was "I intend to respond, but other obligations were more pressing. Thanks for your email, will keep in touch."

- Melissa Fingar, assistant to the President of Human Resources and Organizational Development said in an email January 16, 2019 "…I heard what you said and do not have any reason to question your statements or concerns. It would only be if I thought that you were not credible in your concerns that I would conduct a full-fledged investigation."

- Todd Oldham is the Vice President of Economic and Workforce Development and Career Technical Education. I believe Jeffrey Dunker, William Rotenberg and Matthew O'Connor report to him. The following dates are discussions I had with Melissa Fingar regarding her having a conversation with Todd:
    - October 7, 2019: Melissa Fingar said she would "share" my concerns with Todd. She also mentioned "Once I have spoken with Todd…it seems as though you felt that was a necessary step last time." I do not believe Todd Oldham responded.
    - October 10, 2019: Melissa Fingar said she would "have a conversation with Todd about using an adjunct coordinator…"
    - October 22, 2019: I asked Melissa Fingar if she had "a chance to reach out to Todd?"
    - October 22, 2019: Melissa Fingar replied "I did. He was going to address it, but I have not heard back from him. I will check tomorrow."
    - October 28, 2019: I have Melissa Fingar, "Have you heard from Todd?"

- October 28, 2019: Melissa Fingar replied, "Not yet. I will reach out to him today and let you know what I find out."

- It should be noted that I made every attempt to go through the chain of command, but everyone in my chain of command refused to meet with me.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

300 Pearl St., Ste. 450
Buffalo, NY 14202
(716) 551-5007
TTY (716) 551-5923
FAX (716) 551-4387

Thomas Felton
PO Box 93254
Rochester, NY 14692

Re:   EEOC Charge No.: 525-2019-01555
      Thomas Felton v. Monroe Community College

Dear Mr. Felton:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures, which are based on a reallocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have evaluated your charge based upon the information provided by you. You alleged that you were discriminated against because of your race/ African-American and in retaliation for having complained about discrimination.

I completed a telephone interview with you on December 3, 2019. An assessment of your allegations has been completed. It seems that your allegations did not establish a prima facie case. A Charging Party (you) must provide the building blocks which would lead to reasonably believe there was a violation to the Law. Specifically, you were unable to establish that there was a connection between your basis- race discrimination and the harm that you alleged- unfair work assignment. In addition, none of the information that you provided supports that you engaged in a protected activity (race discrimination complaint) or that you were subjected to retaliatory actions for having engaged in such protected activity.

Based upon an analysis of the information submitted to us, the Commission is unable to conclude that the information establishes a violation of Federal law on the part of Respondent. This does not certify that Respondent is in compliance with the statutes. No finding is made as to any other issue that might be construed as having been raised by this charge.

The Commission's processing of this charge has been concluded. Included with this letter is your Notice of Dismissal and Right to Sue. Following this dismissal, you may only pursue this matter by filing suit against the Respondent named in the charge within 90 days of receipt of said notice. Otherwise, your right to sue will be lost. Please contact Federal Investigator Nelly Sanchez at (716) 431-5017 if you have any questions.

Sincerely,

Date:   DEC 1 9 2019

_____ for
John E. Thompson, Jr., Director
Buffalo Local Office

EEOC Form 161 (11/16)  **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Thomas Felton, Jr.
PO Box 93254
Rochester, NY 14692

From: Buffalo Local Office
300 Pearl Street
Suite 450
Buffalo, NY 14202

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 525-2019-01555 | Nelida Sanchez, Investigator | (716) 431-5017 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_/s/ John E. Thompson_

John E. Thompson,
Local Office Director

DEC 19 2019
(Date Mailed)

Enclosures(s)

cc: Melissa Fingar
mfingar@monroecc.edu
MONROE COMMUNITY COLLEGE
1000 E. Henrietta Road
Rochester, NY 14623